GORDON, *by Next Friend, Appellant*, v. BURRIS *et al.*

### Division One, December 7, 1897.*

1. **Will**: NO ISSUE SUBMITTED: VERDICT: NO OBJECTION: WAIVER. The court instructed the jury to find that the instrument signed by Mrs. Lucinda Burris, etc., is the "last will and testament of said Lucinda Burris." No objection was made to this action of the court on the ground that the statute requires the court to make up an issue "whether the writing produced be the will of the testator or not, which shall be tried by a jury," and that "the verdict of the jury shall be final" except as to appeal. As the verdict, according to this instruction, showed that the jury found that the instrument was her will and no objection was made to the course adopted by the court, the error alone does not justify a reversal, although the issue should have been submitted to the jury.

2. ——: FORM OF JUDGMENT. The mere record entry of the verdict of the jury is a sufficiently formal judgment to establish a will.

3. ——: DEVISEE BY WRONG NAME. The name of testatrix's only granddaughter by an only daughter was Mary Josephine Gordon, and she was named in the will as Lucy May Gordon. *Held*, that the incorrect naming was a latent ambiguity and extrinsic evidence was admissible to remove it, for the purpose of excluding her from claiming as a pretermitted heir.

4. ——: EVIDENCE: LETTERS FROM DEVISEES. A letter from one devisee to the disinherited heir, that he had overheard his brother, another devisee, talking to testatrix and trying to get her to promise to give the land to the devisees afterward named, is incompetent as mere hearsay, in a contest to set aside a will on the ground of undue influence.

5. ——: ——: INTENTION OF DEVISEES. The court committed error in excluding the evidence of a witness that two of the devisees had told him, before the making of the will, that their mother should never leave plaintiff any of her property. Such evidence tended to show a fixed purpose formed at the time to induce testatrix to disinherit plaintiff.

6. ——: DECLARATIONS OF TESTATRIX. Declarations of testatrix made to a third party subsequently to the execution of the will, are not admissible to show undue influence.

* NOTE.—Another branch of this case is found in 125 Mo. 39.

7. ———: AFFECTION TOWARD DISINHERITED HEIR. The fact that testatrix cried when speaking of the disinherited heir, the circumstances being such as to connect the act and the heir closely with the making of the will, is competent to show testatrix's affection for such heir.

8. Practice: EXECUTION OF WILL. Where no issue is made by the pleadings as to the proper execution of a will, and the proof of its execution has been made to the satisfaction of the trial court, the contestants will be estopped as to that issue on appeal.

9. Will: PRACTICE: ISSUE OF UNDUE INFLUENCE. If the jury could have found from the direct evidence and all the circumstances that the fraud or undue influence of devisees induced or influenced the making of the will and the disposition of the property as thereby made, the issue should be submitted to the jury. The evidence of this case is reviewed, and it is held that the evidence tended to prove undue influence, and as the case was taken from the jury by the trial judge, it is assumed by the court in determining the propriety of that course that this evidence was true, and the judgment is therefore reversed and the cause remanded.

*Appeal from Livingston Circuit Court.*—HON. JOSHUA ALEXANDER, Special Judge.

REVERSED AND REMANDED.

*Scott J. Miller*, with whom are *L. H. Waters* and *F. S. Miller*, for appellant.

(1) The testatrix, at the time of making the pretended will, had not capacity to make a will. *Benoist v. Murrin*, 58 Mo. 307; *Young v. Ridenbaugh*, 67 Mo. 574; *Harvey v. Sullens*, 56 Mo. 372. (2) The court erred in taking the case, by mandatory instruction, from the jury. There was evidence sufficient to establish the allegations in the petition, and the case should have gone to the jury. *Buesching v. St. Louis Gaslight Company*, 73 Mo. 231; *Frick v. Railroad*, 75 Mo. 600; *Bush v. Bush*, 87 Mo. 486; *Covey v. Railroad*, 86 Mo. 642; *Gregory v. Chambers*, 78 Mo. 298. (3) In this case the fiduciary relation existed. It devolved upon the defendants to prove the absolute fairness and want

of undue influence and fraud over the mind of the testatrix in obtaining the paper writing. The court erred in placing the burden on the contestant. *Robins v. Hope*, 57 Cal. 497; 1 Story, Eq., sec. 218; Anderson's Law Dic. 459; *Gay v. Gillilan*, 92 Mo. 251; *Carl v. Gabel*, 120 Mo. 298. (4) If the evidence offered conduced in any reasonable degree to establish the probability or improbability of the facts in controversy, it should have gone to the jury. Rice on Ev. 480; *Hart v. Newland*, 3 Hawks, 122; *Trull v. True*, 33 Me. 367; *Hagerty v. Andrews*, 94 N. Y. 195; *Turner v. Baker et al.*, 64 Mo. 245. (5) The record is replete with evidence sustaining the charge of undue influence, and the case should have been submitted to the jury. Schouler on Wills, sec. 227; *Garvin v. Williams*, 44 Mo. 465; *Harvey v. Sullens*, 56 Mo. 372; *Street v. Goss*, 62 Mo. 226; *Ford v. Hennessy*, 70 Mo. 580; *Muller v. St. Louis Hospital Ass'n*, 73 Mo. 242; *Bridwell v. Swank*, 84 Mo. 455. (6) The evidence is sufficient to establish the charge of fraud made in the petition; that fraud is distinct from undue influence; that fraud was practiced on the testatrix; that the testatrix was induced, fraudulently, to make the purported will, and the court erred in not permitting the cause to go to the jury on this issue. *Norton v. Paxton*, 110 Mo. 467; 1 Bigelow on Fraud, 571, sec. 5, title, "Wills;" Beach on Wills; sec. 107; *Davis v. Calvert*, 5 Gil. & J. 269, 301; *Stewart v. Elliott*, 2 Mackey, 307; *Perry v. Buffington*, 11 Ga. 343. (7) The defendants, having filed an amended answer denying the execution of the will, should not have been permitted to withdraw the same after the jury had been sworn. The court should have framed an issue to have been tried by the jury. *Tingley v. Cowgill*, 48 Mo. 291; *Harvey v. Sullens*, 56 Mo. 373. (8) The contestant was not mentioned in the purported

will. Lucy May Gordon is not her name. R. S. 1889, sec. 8877.

*Sheetz, Davis* and *Wait* for respondent.

(1) No declaration to destroy the will is com-petent. *Gibson v. Gibson*, 24 Mo. 227; *Cawthorn v. Haynes*, 24 Mo. 237; *Spoonemore v. Cables*, 66 Mo. 579; *Rule v. Maupin*, 84 Mo. 587; *Doherty v. Gilmore*, 136 Mo. 414. (2) Fraud or undue influence must be a part of the *res gestae* and continue at time of making the will. *Pratte v. Coffman*, 33 Mo. 71; *Garvin v. Williams*, 44 Mo. 478; *McFadin v. Catron*, 120 Mo. 252. (3) The mere fact of unjust discrimination in its provision does not shift the burden of establishing its validity ·on defendant. *McFadin v. Catron*, 120 Mo. 252. Nor is the mere existence of an improper or undue influence operating, but not exercised by the person possessing it, upon the mind of the testatrix when she makes the will, sufficient fraud for invalidat-ing it. (4) Undue influence is over-persuasion or force. *Sunderland v. Hood*, 84 Mo. 293; *Jackson v. Hardin*, 83 Mo. 175; *Myers v. Hauger*, 98 Mo. 439; *Richmonds Appeal*, 21 Am. St. 94, and notes. (5) The only question in this case is mental capacity, and we rely on Judge Broaddus' and Dr. Freeman's evi-dence in the case. (6) Contestants can not take non-suit. It is in the nature of an appeal. *Benoist v. Murrin*, 48 Mo. 48; *Jackson v. Hardin*, 83 Mo. 185; *Hughes v. Burriss*, 85 Mo. 665; *McMahon v. McMahon*, 100 Mo. 97. (7) To dismiss the case is erroneous, and this court, on appeal, should have rendered final judg-ment. *Jackson v. Hardin*, 83 Mo. 184; R. S. 1889, sec. 2068. Therefore, this court should have ordered final judgment for proponent under section 2068, Revised Statutes 1889. (8) There is no evidence of undue

influence.   *Doherty v. Gilmore*, 136 Mo. 414.  (9) There
is no petition in this case, and any order of the court
taking it from the jury is proper.   General charge of
fraud is no charge, and defendant's objection should
have been sustained to any evidence.   *Hoester v. Sam-
melmann*, 101 Mo. 619.

MACFARLANE, J.—This is a statutory suit contest-
ing the will of Lucinda Burris, deceased.   The petition
charges in substance that on and prior to March 20,
1890, John Burris and Lucinda Burris were husband
and wife.   That there was born of the marriage three
sons, Augustus, George, and Frederick, and one
daughter, Josephine.   That the daughter married
Liston Gordon in 1878, by whom she had one child,
plaintiff Mary Josephine Gordon, and died in 1885.
That on the twentieth day of March, 1890, the
said Lucinda Burris executed and had witnessed a
paper writing by which she devised to her three sons
in equal parts all her estate, consisting of two hundred
and forty acres of land, worth about $30 per acre,
which was made subject to $30, which she bequeathed
to Lucy May Gordon.   The said Lucinda died on the
thirty-first of March, 1890, the said three sons and
plaintiff, her granddaughter, surviving her.   The will
was in due time probated in common form by the pro-
bate court of the county.   The three sons, devisees
under the writing, are made defendants.   The petition
charges that "said defendants by fraud, art, and deceit
and undue influence, over-persuaded and induced the
said Lucinda Burris to make the pretended will,"
whereby the said plaintiff was virtually disinherited.
The answer admits the probate of the will, and avers
that the paper writing is the last will and testament of
the said Lucinda Burris, and denies all other allega-
tions.

The answer charges as a special plea that plaintiff had previously prosecuted a suit against the same parties contesting the same will. That after certain proceedings in said court plaintiff took a nonsuit. That thereupon defendants filed a motion for judgment establishing the will. That said motion had never been disposed of, but was still pending and was a bar to this suit.

The reply was a general denial of new matter.

By agreement the case was tried before J. W. Alexander, Esq., as special judge.

To sustain the will defendants examined as witnesses Judge E. J. Broaddus and Dr. Freeman, who were the subscribing witnesses. These witnesses both testified that the said Lucinda Burris signed the paper writing as her last will, that she was of sound mind, and that they subscribed their names as witnesses in her presence. After this formal proof the will was read in evidence.

Plaintiff, to sustain the charge of her petition, offered evidence tending to prove that testatrix at the time of her death was over seventy years old; that she had suffered from la grippe, followed immediately by an attack of pneumonia, from which she was convalescing when the will was made, though she was still confined to her bed and was physically very feeble. While suffering from pneumonia she was exposed to the measles, and she, her family and her physician, believed that in her condition she could not survive an attack of that disease. In these circumstances the will was made on March 2, 1890. In a few days thereafter she took the measles, from which she died on the thirty-first day of the same month.

The evidence tended to prove also that testatrix regarded plaintiff, her grandchild, with affection. The evidence does not show the age of the defendants or

whether they lived in the family of the testatrix or not. It may be inferred, however, that they were mature men; one of them had studied medicine, and acted as agent for his mother in renting her land. We can fairly infer, also, that they either lived in the house or near by at the time the will was made. One of them was sick at the time and occupied a room in the house, and the others appeared to have been about the house much of the time.

There was evidence tending to prove that during the sickness of Mrs. Burrus, and before her death, defendants insisted that she should make her will and give them the property. A witness testified that she heard defendants in the room with their mother talking "about having her make the will; they thought it ought to be done, they said." They said that they ought to have the property. Their father went in at this time and says "Mother is sick, don't bother her now." Cora Glore, who was a servant in the family, testified that testatrix told her, after the will had been made, that "they coaxed her to make the will—told her she might die and she had better have a will . . . . . . . She said they did not want her to will little May anything. She called her little May." The witness testified that when she spoke of little May she cried. Mrs. Wilkison testified that one of the boys, Fred, had studied medicine, and waited on his mother and administered medicine to her.

The record shows the following evidence of Judge Broaddus who wrote the will and was one of the subscribing witnesses: "Before I left, after I had written the will and it had been signed, the old lady said: 'Now, Mr. Burris, you know you agreed to provide for Mary (whatever her name was) and now is the time to have the will written while you are here.' Q. 'While you were there?' A. 'While Judge Broaddus is here.' I

said 'yes, I would write it out.'   He said 'No,' he wasn't ready just then.   He said he would be in town in a few days and I could write his will and he would then provide for the little girl.   She said at that time that Mr. Burris was going to provide for Mary, or whatever her name was."   Q.   "They directed that conversation to you?"   A.   "Yes, sir; to me and in the presence of the old man and George.   The old man said he intended to do so and would do so."   Q.   "Did the old man ever come to your office and make such a will?"   A.   "He never came to my office afterward that I know of. . . . . . . . ."   Dr. Freeman testified substantially to the same facts, though his impression was that the conversation occurred before the will was signed.

Plaintiff offered to read in evidence a letter from defendant George Burris to plaintiff, which on objection by defendants was excluded as hearsay.   This letter contained the following statement:   "I came over to father's from my home and went into the room adjoining the one where mother lay sick and the hired girl was in that room, and Gus was in the room with mother and he did not know I was on the place and I do not think he knew anyone could hear in the adjoining room what he said to mother.   He was talking and trying to get mother to promise that she would give the land to us three boys, that is, myself, Gus and Fred."   Plaintiff offered to prove by a witness that defendant George Burris said to him in the summer of 1889 that plaintiff should never have anything.   This evidence was excluded.   Plaintiff offered to prove by the same witness that George and Gus Burris each said to him, in the summer of 1889, that their mother never should leave the little girl any of her property or anything.   This evidence was also excluded.

At the close of defendants' evidence the court directed the jury to return the following verdict:   "We,

the jury, find the instrument signed by Mrs. Lucinda Burris and attested by E. J. Broaddus and J. B. Freeman is the last will and testament of said Lucinda Burris." The verdict was returned as directed and the judgment, after reciting the verdict, is as follows: "It is therefore considered and adjudged by the court that the plaintiff take nothing by her writ. That the defendants go hence without day discharged hereof, and that they recover their costs of plaintiff in this cause expended." From this judgment plaintiff appealed.

I. In a suit to contest the validity of a will which has been proved in common form, or to have a will proved which has been rejected, the court is required to make up an issue, "whether the writing produced be the will of the testator or not, which shall be tried by a jury, or if neither party require a jury, by the court." R. S. 1889, sec. 8888.

"The verdict of the jury, or the finding and judgment of the court, shall be final, saving to the court the right of granting a new trial, as in other cases, and to either party an appeal in matters of law." Section 8889.

It appears nowhere in this record that an issue was made up by the court as required by statute, but the verdict of the jury finds on the issue that should have been submitted. No objection was made to the course adopted, and the verdict showing that the proper issue was tried, the error in procedure does not justify a reversal of the judgment.

II. Ordinarily the formal judgment of the court upon the verdict of a jury is necessary to establish conclusively the fact tried, but this statute makes the verdict of the jury, upon the issue tried, final and conclusive. By the verdict the jury finds the paper writing produced to be the will of Lucinda Burris, and

this verdict is entered upon the records of the court. We are of opinion that the record entry is sufficient in form to constitute a formal establishment of the will.

III.   Plaintiff sues as Mary J. Gordon and the evidence shows that her true name is Mary Josephine Gordon.   Under the will the testatrix devises $30 to Lucy May Gordon.

There is no doubt under the evidence that the testatrix had in mind and intended to name in the will her granddaughter, the child of her deceased daughter Josephine, and her husband Liston Gordon.   When the will was written the name of this child was discussed.   She was mentioned as her granddaughter, as she is in the will, and as the daughter of Liston Gordon.   Testatrix insisted that her name was Lucy May and it was so written by Judge Broaddus.   It was shown that the old lady always called the child May. It does not appear that testatrix had any other granddaughter.   The evidence is very conclusive that the intention was to name plaintiff in order to prevent her from claiming as a pretermitted heir.   The necessity of naming or providing for this particular child was mentioned at the time and induced the provision for her.   The incorrect naming of the granddaughter was a latent ambiguity in the will and extrinsic evidence was admissible to remove it.   *Riggs v. Myers*, 20 Mo. 243; *Bradley v. Rees*, 113 Ill. 327.

IV.   The question seriously discussed by counsel is whether there was sufficient evidence that the will was the product of undue influence or fraud to require a submission of the issue to the jury.   As bearing on that question some evidence was offered by plaintiff and excluded by the court.

Complaint is made to the exclusion of the letter written by defendant George Burris to plaintiff in which he states that he had heard defendant Gus

Burris "talking and trying to get his mother to promise that she would give the land to us three boys." This letter was mere hearsay. George Burris was himself a competent witness and could have testified to the conversation between Gus and his mother, but his statements of what the conversation was, either by writing or orally, were properly excluded. For the same reason the court properly excluded the evidence of witnesses who were called by plaintiff to prove that George said he heard Gus declare that their mother should never leave plaintiff any of her property.

V. But the court, we think, committed error in excluding the evidence of the witness to the effect that George and Gus Burris each said to him, in the summer of 1889, that their mother should never leave plaintiff any of her property. In ruling against this evidence the court gave this as its reason: "The testimony will be excluded until there is testimony offered tending to connect it with the execution of the will." The evidence tends to show an intention, at that time formed, to prevent the testatrix from so disposing of the property as to give plaintiff any share in it. Plaintiff was, at that time, morally and legally, as much entitled to a share in the property of her grandmother as either of the defendants. If testatrix had died intestate plaintiff would have inherited one fourth of the estate. In making the statement attributed to them, the language clearly implies that defendants intended, if possible, to prevent their mother from making a will or deed in such a way as to give plaintiff any benefit of or interest in her property. The conversation was within a year of the date of the will and the evidence should have been admitted as bearing upon the question of undue influence. It tends to show a fixed purpose, on the part of said defendants, to do the acts they are charged with having done when

the opportunity arrived. In considering the question, therefore, whether or not there was any evidence of fraud or undue influence which required a submission of the question to the jury, we should treat this evidence as having been admitted.

VI. The evidence of Cora Glore detailing declarations of the testatrix, made subsequent to the execution of the will, was given over the objection of defendants. That such declarations are not admissible as evidence of the facts stated, is well settled in this state. *Gibson v. Gibson*, 24 Mo. 234; *Walton v. Kendrick*, 122 Mo. 518; *Doherty v. Gilmore*, 136 Mo. 414.

The fact that the testatrix cried when speaking of plaintiff in connection with making the will, and the disposition of her property thereunder, was admissible, however, to show the affection she entertained for her grandchild, and her sentiments in thinking of what she had done. The conversation must have been very soon after the will was made, for testatrix died within ten days after that event. The making of the will was evidently the one principal subject on the mind of the testatrix at the time of this manifestation of grief, and we think it sufficiently connected in point of time with the making of the will, considering the circumstances, to be admissible as a verbal fact, or external manifestation of the internal feelings. *Gibson v. Gibson, supra.*

The declaration that defendants coaxed Mrs. Burris to make the will and that they did not want her to leave "little May" anything was not admissible as evidence of those facts, and will not be considered in determining the sufficiency of the evidence.

VII. In these statutory proceedings to contest the validity of wills the burden of proving their due execution rests upon those maintaining their validity. After evidence has been given tending to prove that the disputed writing was executed in the manner required by

the statute, the burden of proof rests upon those contesting its validity to prove that it is rendered invalid by extraneous facts such as incompetency, fraud, or undue influence. The issue to be tried by the jury, or the court sitting as a jury, is "whether the writing produced be the will of the testator or not." The triers of fact must therefore determine whether or not the will was executed according to the requirements of law and whether or not, notwithstanding its due execution, it is rendered invalid on account of the extraneous facts charged. *Maddox v. Maddox*, 114 Mo. 35, and cases cited.

VIII. There has been some question among lawyers whether, under the terms of the statute, both questions should not be submitted to the jury and allow it to determine from all the evidence whether the writing in question be the true will of the person who executed it or not. It is well settled as the law of this State that the party who has the burden of proof upon an issue must produce evidence tending to prove it, otherwise the court will pass upon the question as a matter of law, and will direct the jury as to its finding on that issue. This rule has been applied to this class of suits, and it is now well settled that if contestants do not produce substantial evidence tending to prove the ground charged as a cause for invalidating the will, the court will direct the finding of the jury against them on that issue. *Jackson v. Hardin*, 83 Mo. 175; *Maddox v. Maddox, supra*; *McFadin v. Catron*, 120 Mo. 269; *Doherty v. Gilmore*, 136 Mo. 416.

IX. But when evidence is given in support of an issue, and such evidence is not of a character which requires the interpretation of the court, it has been held that the jury should be left to pass upon it though no contradictory evidence be given. The jury, it is said, must determine the credibility of witnesses and the

weight to be given to their evidence, and a court, when it undertakes to pass upon the sufficiency of such evidence to prove a given fact, usurps the province of the jury. This rule has not been uniformly recognized in this State, but was declared at an early day and has been generally followed in the later decisions. *Bryan v. Wear*, 4 Mo. 106; *McAfee v. Ryan*, 11 Mo. 364; *Wolff v. Campbell*, 110 Mo. 120.

X. Plaintiff's counsel now insist that the rule should be applied in this case. They say the burden is on the proponents to establish the due execution of the will, and that issue should have been submitted to the jury though the evidence of the two attesting witnesses show every fact essential to its proper execution, and though the witnesses are unimpeached and their evidence is uncontradicted.

The proceedings provided for contesting wills stands for the probate in solemn form, in which all the parties interested are brought before the court. The probate, in common form, is conclusive on all persons until impeached and brought in question by the proceedings provided by the statute. The statute requires the contest to be commenced by some person interested "by petition to the circuit court of the county." This implies that the ground relied upon to defeat the will shall be stated in the petition, and if no sufficient ground be stated, the petition is demurrable. If the invalidity is claimed to exist on account of extraneous matters and no issue is made by the pleadings as to the proper execution of the will, then the pleadings should be construed as an admission of that fact by the parties, and if the formal proof is made to the satisfaction of the court, they should be estopped, on appeal, to question the correctness of the verdict, though rendered under the imperative direction of the court. The charge in this petition is that "defendants, by fraud, art, and

deception and undue influence, over-persuaded and induced the said Lucinda Burris to make a pretended will'' etc. By her petition plaintiff does not question the due and proper execution of the will or tender an issue on the question of its execution, nor do any of the parties to the suit do so.

Still, a writing is not a will unless executed with all the formalities required by the statute, and when brought before the court for probate, whether in common or solemn form, proof of execution is necessary, but in case the parties make no issue upon it, the proof being necessary for the satisfaction of the law and not of the parties, they will be bound by their pleadings as in other cases. The evidence of the two subscribing witnesses shows that the paper writing was signed by Lucinda Burris as her last will and that they subscribed their names thereto as witnesses in her presence and that she was at the time of sound mind. On this evidence the court, in effect, directed the jury to find that the will was duly executed. We are of the opinion that the fact the jury was required to find was inferentially admitted by the pleadings of all the parties interested, and no error, at least of which they complain, was committed in giving the peremptory instruction. It is therefore unnecessary to decide in this case, whether, if an issue had been made by the pleadings of the parties upon the question of the execution of the will, the court could properly have directed the jury on that issue.

XI. The only remaining question is whether or not there was substantial evidence tending to prove that Mrs. Burris was induced to execute the paper by means of the fraud or undue influence of defendants. In consideration of this question we must look, not only to the direct evidence, but to all the circumstances, and if, considering them all, the jury could fairly have

found that the fraud or undue influence of defendants influenced or induced the making of the will and the disposition of her property as thereby made, then the issue should have been submitted to the jury.

Mrs. Burris, at the time of making the will, was over seventy years of age and was just recovering from a long and serious spell of sickness. She was still confined to her bed and was very weak and much emaciated. Yet her mind was vigorous for one of her age and condition. Her three sons, the defendants herein, seem to have been of mature years and lived either in the family or in the immediate neighborhood. The evidence tends to prove that they were anxious that the land of their mother should be divided among themselves to the exclusion of plaintiff. It is manifest from the evidence also that Mrs. Burris desired that her granddaughter should be provided for. It is shown by the fact that before she made her will she exacted a promise from her husband that he would make provision for her out of his own property. It is shown also from her distress when afterward talking of plaintiff in connection with what she had done under her will. These facts have a tendency to prove that the property was not disposed of as testatrix wished. There was evidence tending to prove that the old lady was so worried over some matter by the conduct of her son, defendant Gus Burris, that the attending physician required him to be kept away from her as a condition of his continuance as her physician. The evidence shows no troublesome family matter except the making of the will. The jury might have inferred from this circumstance, if unexplained, that the importunities of this son in regard to making a will was the cause of worry to the testatrix. We have the evidence of at least one witness who testifies to facts which these circumstances corroborate. Mrs. Atkinson testified

that she heard the Burris boys talking to their mother about making a will. They said that they three ought to have the property. "Grandpa came in and he says, mother is sick, don't bother her now."

For the purposes of the questions in this case, we must take this evidence as true. It shows that defendants were importuning their mother, though then sick, to make a will, and leave them the property, and it worried her. A jury might well infer that defendants were endeavoring, by unreasonable and worrying importunities, to overcome the wish of their mother to allow plaintiff to inherit her proportion of the estate. The evidence shows testatrix did not consent to leave all her property to defendants until her husband had agreed to provide for plaintiff out of his property. This circumstance tends to show that the old lady held out in her wishes until this promise was made. The fact is that Mr. Burris never made any provision for plaintiff, and soon after the death of his wife, died insolvent. If defendants knew of his insolvency and his inability to provide for plaintiff, and this promise was used to induce testatrix to make the will, the facts would have a tendency to prove the use of improper means and influences to secure the making of the will. Taking into consideration the condition of Mrs. Burris, her affection for her granddaughter, then a child of twelve years, her evident wish to provide for her; taking the opportunities of defendants, the grown sons of testatrix, living near by, desiring to secure to themselves the property; their persuasions, the worry of testatrix before making the will, and her grief afterward, we conclude that the evidence tended to prove undue influence and that the issue should have been submitted to the jury.

No evidence was offered by defendants in support of their special plea of the pendency of another suit.

If the motion mentioned in said plea is still pending, it can be withdrawn or dismissed by plaintiff before a retrial is commenced.

The judgment is reversed and the cause is remanded for a retrial.   All concur.