# MARY KETCHUM, Respondent, v. THE CITY OF MONETT, Appellant.

**Springfield Court of Appeals, March 9, 1916.**

1. **MUNICIPAL CORPORATIONS: Public Improvements: Sidewalks: Ordinance Authorizing Liability of City.** Before a city can be held liable for damages for making fills to bring the sidewalk portion of the street to grade, it must be shown that such work was authorized by the city by ordinance.

2. ———: **Ordinances: Resolutions: Presumptions.** Unless it is shown that a resolution authorizing the laying of concrete sidewalks was passed with the same formality observed as is required for the passage of an ordinance therefor, it will be presumed that it was not so passed.

3. ———: **Change of Grade for Sidewalks: Ordinances.** Action against a city for damages for making fills to bring the sidewalk portion of a street to grade. Ordinance and resolution examined and *held* that the action is not justified on the ground that under the ordinance the grade of the street was changed to plaintiff's damage, not being susceptible of the construction that the laying of the new concrete walks at the new grade was required unless no walks had been already laid.

4. **MUNICIPAL CORPORATIONS: Public Improvements: Change of Grade for Sidewalk: Damages: Measure of.** In an action against a city for damages to property because of change in the grade of a street, the measure of damages is the difference between the market value of the property before and after the change.

5. ———: ———: ———: ———: The cost of elevating the premises, removing and replacing sod, shrubs, etc., cannot be considered in ascertaining the damage to property because of change of grade of a street.

6. ———: **Public Improvements: Sidewalks: Change of Grade: Damages.** A property owner has no right of action against a city merely because an ordinance is passed authorizing a change of grade in the street. Such right of action arises only after the work is actually done.

7. ———: ———: ———: ———: **Right of Action.** Defendant city was proceeding with the construction of sidewalks at a new grade in front of plaintiff's property. The fact that the plaintiff made an independent contract for the doing of the work will not defeat his right of action for damages.

193 App. 34

Appeal from Barry County Circuit Court.—*Hon. Carr McNatt*, Judge.

REVERSED AND REMANDED.

*H. A. Gardner* for respondent.

*T. D. Steele* for appellant.

ROBERTSON, P. J.—Plaintiff alleges that the defendant is a city of the third class; that she was the owner of two adjoining lots fronting east on Fifth street of said city; that they were well improved and had two residences thereon, shrubbery and lawns and a brick sidewalk in front thereof all upon the natural surface; that the defendant by two separate resolutions passed and approved by the Council of said city September 9, 1913, declared it necessary to improve said Fifth street by constructing in front of plaintiff's property concrete curb, gutter and sidewalk; that bids were advertised for and ordinances passed and approved October 16, 1913, accepting bids for the work and authorizing contracts for the curb and gutter and sidewalk at the established grade and under the direction and supervision of defendant's engineer; that contracts were entered into with G. W. Baldridge for the building of the sidewalk and with L. A. Mason for the curb and gutter on the established grade; that said contracts provided for the payment for said work to be made by special tax bills issued by defendant; that the contractors carried out the contracts by making the improvements as therein provided and tax bills were ordered issued to the contractor; that the grade furnished to the contractors by defendant was about two and one-half feet above the natural surface of said lots and that said improvements were made without the city taking any steps

to ascertain and assess plaintiff's damages. The defendant answered admitting its incorporation and denying each and every other allegation in plaintiff's petition. A jury trial resulted in a verdict for the plaintiff upon which judgment was entered and defendant has appealed.

At the trial the defendant admitted that in 1907 the grade in front of plaintiff's property was established and the testimony discloses that this new grade was between thirteen inches or two feet above the natural surface where the improvements complained of were made. The resolution concerning the sidewalk referred to in the petition was offered in evidence and it is admitted that the resolution concerning the curb and gutter is the same except that it calls for curb and gutter instead of for sidewalk. The resolution concerning sidewalk recites: "That the Council deems and declares it necessary to improve both sides of Fifth street of said city . . . by excavating, filling, preparing foundations therefor, and constructing thereon first class concrete sidewalk on both sides of said Fifth street, . . . where such improvements are not already in or permits granted therefor." The ordinance accepting the bid and authorizing the contract provides for the excavating, filling, etc. "except where sidewalks are already in or permits granted therefor." The contract entered into follows the language of the ordinance.

The contractors placed the curb and gutter in front of plaintiff's property seven or eight feet from the sidewalk, also removed the brick, made such fills as were necessary to bring the curb and gutter and sidewalk to the established grade and replaced the brick walk upon such grade. On April 24, 1914, the engineer of the defendant city reported to the Council that the work had been completed according to the contract; that he had computed and apportioned the cost, giving the square feet of new concrete walk

with its total cost at twelve cents per square foot, the contract price, and also the number of square feet of "relay brick walk" with the total cost thereof at six per cent per square foot. He then apportioned the cost of the various lots and charges plaintiff's lot with its proportional part of "relay brick." This report was filed, adopted and approved by the council, but it is doubtful if there is anything in the record tending to show that any ordinance was passed by the city adopting this report and ordering tax bills. No such ordinance was offered in evidence. The city clerk was a witness for the plaintiff and he testified that when the council accepted the report of the engineer the city attorney was instructed to draft an ordinance authorizing the issuance of tax bills. The witness was then asked if he had the ordinance drawn by the city attorney as directed by the council and he replied that he did not think he had it with him. He then testified that the order made by the council was carried out and the ordinance was passed. The plaintiff's attorney then stated that he had subpoenaed the witness to bring all the records and admitted that there were no tax bills issued against the property but that they were ordered and the plaintiff had to pay them. The court then remarked that it could be shown that plaintiff had "paid it off." The plaintiff's attorney replied that she had testified that she paid. As a matter of fact the plaintiff had testified that she paid for the curb and gutter but that she had not paid for the sidewalk, so we conclude from this record that the ordinance to which reference was being made was the ordinance concerning the curb and gutter.

At the close of the testimony the defendant requested the court to direct a verdict in its behalf which was refused and thereupon, at the request of the plaintiff, instructed the jury that if the defendant by its contractor constructed in front of plaintiff's property combined curb and gutter and sidewalk

under the direction and supervision of the defendant engineer and at a grade established and furnished said contractors by defendant; that said improvements were placed higher than the natural surface so as to make a material change of the grade above the natural surface and plaintiff's property thereby damaged, that the verdict should be for the plaintiff. Several other instructions were given upon the measure of damages.

Before the city can be held liable for damages in a case of this character for making fills to bring the sidewalk portion of a street to an established grade it must be shown that the city by ordinance authorized it. [McGraw v. Granite Bituminous Co., 247 Mo. 549, 155 S. W. 411; Bigelow v. City of Springfield, 178 Mo. App. 463, 162 S. W. 750.] No question is raised in this case as to ratification of any improvement made, if as a matter of fact such a question could get into a case of this character, but the case was tried and is presented here solely upon the theory that the city by its resolution and the ordinance accepting the contractor's bid and authorizing the contract provided for the bringing of the street to the established grade and constructing thereon the sidewalk. It will be observed that the resolution provided for concrete sidewalks where *such* improvements were not constructed. No *such* walk was in front of plaintiff's lots and, therefore, the resolution would have justified the placing of a concrete walk along plaintiff's property, but the resolution was not shown to have been adopted with the same formality as is required for the passage of an ordinance and until this is shown we must hold that it was not so passed. [Dalton v. City of Poplar Bluff, 173 Mo. 39, 47, 72 S. W. 1068.] Now, the ordinance which was passed, and the contract entered into pursuant therewith, made no provision whatever for fills or concrete walks where sidewalks were already in and as there was

a walk in front of plaintiff's property neither the ordinance or the contract undertook to provide for the construction thereunder of any concrete or other kind of walk in front of her property. All places where walks were in, without respect to the kind, were excepted from the ordinance and the contract. The plaintiff seeks to avoid this construction of the ordinance and contract by arguing that the exception did not apply to any and all kinds of sidewalks but that it meant only such sidewalks as would meet the demands and necessities of a properly improved street with all walks constructed upon the established grade, but this argument overlooks the fact that the city did make the exception in unqualified terms which we are not authorized to ignore and read into the contract something contradictory of the expressed terms thereof. It may be, as suggested in the brief of plaintiff, that if plaintiff's walk had not been brought to the established grade an unreasonable depression would have been left in the newly constructed walk, but this is a matter with which the city must deal in a case of this character, and not the courts. Since the ordinance upon which plaintiff relied made no provision for bringing the sidewalk to the established grade and as the doing of this constituted the material grounds of her complaint and the principal act relied upon at the trial and submitted to the jury we must hold that the judgment must be reversed and the cause remanded.

There are other questions in this case, thought not necessary to discuss as reasons for the conclusion we have reached, which may be material in a re-trial, and we shall, therefore, notice them.

Plaintiff's Instruction No. 2 is as follows:

"The jury are instructed that if you find for the plaintiff your verdict should be for such sum, not to exceed one thousand dollars, as you may find and believe from the evidence would equal the amount that

the market value of such property was diminished by
such acts of the defendant and in estimating the
damages to said property you may take into consid-
eration as elements of damage with other evidence in
the case, the cost, if any, necessary to fill in said lots
to the grade as changed by defendant, and raising
and replacing the improvements thereon and the nec-
essary destruction or damage of any shrubbery or
lawns that you may find and believe was on said prop-
erty, allowing, however, as an offset any special
benefit, if any, in the way of appreciation or increase
in value of said property by reason of raising the
grade in front of plaintiff's said property.''

The items of cost referred to in this instruction
are properly considered ''in estimating the damages
of the plaintiff'' (Smith v. Kansas City, 128 Mo. 23,
31, 30 S. W. 314), but they are not to be considered
by the jury as ''elements of damage.'' In the Smith
case there was an instruction similar to the one here.
There the plaintiff prevailed and the defendant ap-
pealed. The Supreme Court affirmed the judgment,
but in commenting on the instruction stated that:
''In plain and unmistakable terms, the jury were told
in other instructions, for both plaintiff and defend-
ant, that the plaintiff's right to recover must be lim-
ited to the amount that they should find that the mar-
ket value of the property had been depreciated by the
lowering of the grade.'' It was evidently considered
that the instruction was wrong, standing alone, and
it is a useless and dangerous practice to use it in its
there form in a different setting, considering not only
the accompanying instructions but variations in testi-
mony.

There is some evidence in this case suggesting
that plaintiff may have had an arrangement directly
with the contractor for the city for removing and
replacing the walk in front of her property. If she
thus undertook to do the work and it had to be done

on the established grade then the liability of the city would not be different than if the contractor had done it under his contract with the city. The mere establishing of the grade on the records of the city causes no damage, but a party "has his right of action against the city which has authorized by ordinance the change of grade, at such time as the consequent injuries become apparent and susceptible of reasonable ascertainment. This would not be in advance of the doing of the work upon the newly-fixed grade line." [McGrew v. Granite Bituminous Paving Co., 247 Mo. 549, 563, supra.] However, when substantial improvements are made by the city on the new grade and thereafter by the property owner personally or under private contract and the improvements must be at a grade established by the city which result in the change of the natural or previously established grade, then the liability of the city attaches.

The testimony in this case discloses that the roadway of the street in front of plaintiff's property had been brought to the established grade before the curb and gutter had been put in or plaintiff's walk changed, and consequently, if there is to be a re-trial of this case the plaintiff should be allowed to amend her petition and try the issues, if she so elects, with all claims for change of grade for which the city is liable included therein. The city is entitled to the full advantage of all benefits conferred upon plaintiff's property by the improvements made in the entire street in front of plaintiff's property for which it is liable even though the plaintiff does not so shape the issues as to claim damages for the change of the grade all the way across the street in front of her property.

The judgment is reversed and the cause remanded. *Sturgis* and *Farrington, JJ.,* concur.